# TOWN OF REDDING *v.* ELFIRE, LLC, ET AL.
## (AC 26909)

Gruendel, Rogers and Lavine, Js.

Argued September 27—officially released December 26, 2006

*Brian E. Lambeck*, for the appellant (named defendant).

*Adam J. Cohen*, for the appellee (substitute plaintiff Spray [Parcel 6] Partnership).

*Opinion*

LAVINE, J. The defendant Elfire, LLC,[1] has appealed for the second time from a judgment of the trial court in this action to foreclose a municipal tax lien commenced by the plaintiff, the town of Redding.[2] In the current appeal, the defendant claims that the trial court (1) abused its discretion by denying its petition for a new trial and (2) rendered a judgment of foreclosure on an illegal assessment. We affirm the judgment of the trial court.

In the defendant's first appeal, this court set out the following facts, which provide the context and procedural history for the defendant's current appeal. "On October 26, 1999, the plaintiff commenced this tax foreclosure action against the defendant for unpaid property taxes that had been assessed for the years 1994 through 1998 on certain real property at 8 Packer Brook Road [in Redding]. The defendant acquired the subject property by quitclaim deed dated September 15, 1995,

[1] "The plaintiff [the town of Redding] also named Walter G. Spilsbury, doing business as Victoria Investment Fund, as a defendant in this action. Spilsbury, however, was defaulted for failure to appear . . . ." *Redding* v. *Elfire, LLC*, 74 Conn. App. 491, 492 n.1, 812 A.2d 211 (2003). Spilsbury is not a party to the current appeal. We therefore refer in this opinion to Elfire, LLC, as the defendant.

[2] Spray (Parcel 6) Partnership was substituted as the party plaintiff and is the entity currently prosecuting the foreclosure action.

and recorded in the land records on September 18, 1995. . . .

"In its amended complaint, dated January 3, 2000, the plaintiff indicated that the property that it sought to foreclose was the property described in 'Exhibit A.' Exhibit A, which the plaintiff attached to the amended complaint, described the property in relevant part as follows: 'All that certain piece or parcel of land situated in the Town of Redding . . . shown and designated as Lot No. 4 on a certain map . . . which map is filed in the Redding Town Clerk's Office as *Map No. 2009.*' . . . The certificates of continuing tax lien filed by the plaintiff also referred to map no. 2009 in describing the liened property.

"On February 7, 2000, the plaintiff filed a motion for summary judgment on the ground that it had established the prerequisites for tax foreclosure set forth in Practice Book § 10-70. At the hearing on the plaintiff's motion, the defendant contended that there was a discrepancy between the description of the property being foreclosed and the property that was assessed for taxation and that [the] plaintiff's assessment was invalid because it was assessed on an illegal map. Specifically, the defendant argued that in assessing the property, the plaintiff's tax assessor had relied on map no. 3752, which is a map of a proposed subdivision that was never approved by the plaintiff's planning commission. The description of the subject property in map no. 3752 is different from the description in map no. 2009.

"On March 6, 2000, the court denied the plaintiff's motion for summary judgment on the ground that the defendant had raised a genuine issue of material fact with respect to the property's description. The court denied the motion without prejudice to its renewal after the plaintiff amended its complaint to rectify the discrepancy between the maps. On April 7, 2000, the plaintiff filed its fourth amended complaint, which is

identical to the January 3, 2000 amended complaint except that it changes the description of the property in the attached exhibit A. The amended exhibit A describes the property being foreclosed in relevant part as follows: 'All that certain piece or parcel of land situated in the Town of Redding . . . shown and designated as Revised Lot 4 on a certain map . . . which map is on file in the Redding Town Clerk's Office as *Map 3752.* . . .

"The plaintiff filed a 'renewed' motion for summary judgment on its fourth amended complaint. At the hearing on the plaintiff's motion, the defendant again contended that the plaintiff's assessment was invalid because it was done on an illegal map. The defendant also argued that the fourth amended complaint failed to rectify the factual discrepancy concerning the description of the property and, in fact, made matters worse by purporting to foreclose on property the description of which is at variance with the description in the certificates of tax lien. In response, the plaintiff argued that the defendant's challenges to the validity of the assessment were time barred pursuant to General Statutes §§ 12-111 and 12-119, and that Special Acts 1999, No. 99-7, § 1, validated any alleged defect in the assessment. The plaintiff also argued that the defendant's tax liability was not affected by the discrepancy between the maps with respect to the property's description.

"On June 12, 2000, the court [*Radcliffe, J.*] granted the plaintiff's motion for summary judgment. . . . [T]he court ordered foreclosure by sale and set the sale date of June 16, 2001. . . . [T]he defendant filed [its first] appeal." (Emphasis in original.) *Redding* v. *Elfire, LLC*, 74 Conn. App. 491, 492–95, 812 A.2d 211 (2003).

In its first appeal, the defendant claimed that Judge Radcliffe improperly granted the motion for summary

judgment because (1) there were genuine issues of material fact and (2) its special defense of an invalid tax assessment was not time barred. Id., 492. This court agreed with the defendant's claim that there were genuine issues of material fact that precluded the granting of the plaintiff's motion for summary judgment; id., 495;[3] but concluded that Judge Radcliffe properly determined that the defendant's special defenses were time barred. Id., 497. The judgment was reversed, and the case was remanded for further proceedings. Id., 499.

The subsequent record discloses that on February 13, 2003, the plaintiff filed a fifth amended tax foreclosure complaint. On August 5, 2004, Spray (Parcel 6) Partnership (Spray) was substituted as the party plaintiff and filed an amended foreclosure complaint. Following a trial, on December 1, 2004, the court, *Hon. Sidney Axelrod*, judge trial referee, rendered judgment of foreclosure by sale in favor of Spray.

In his memorandum of decision, Judge Axelrod found that the defendant acquired the subject property at 8 Packer Brook Road, Redding, by deed dated September 15, 1995. That deed was recorded in volume 196 at page 340 of the plaintiff's land records. The property is described in that deed (parcel B) as lot 4 on the Packer Brook Knoll subdivision map, map no. 2009, which is on file in the office of the town clerk. The property is an unimproved parcel traversed by a right-of-way. The subject property has had no other description during the defendant's period of ownership up to

---

[3] This court reasoned that "[t]he evidence submitted by the defendant in opposition to the plaintiff's motion for summary judgment provides an evidentiary foundation that demonstrates that a genuine issue of material fact exists as to the proper description of the property that is the subject of the foreclosure. Although it is undisputed that the defendant's tax liability is not affected by the discrepancy between the maps with respect to the property's description, this court declines to affirm the foreclosure judgment because it is based on what appears to be an incorrect description of the subject property in an illegal map." *Redding* v. *Elfire, LLC*, supra, 74 Conn. App. 497.

and including the time of trial. The boundary lines of the subject property have never been altered or reconfigured, so that the property always has been as shown on map no. 2009 during the period in question.

The court further found that the defendant owns another parcel at 6 Packer Brook Road that is adjacent to the rear and south of the subject property. During the summer of 1995, the defendant proposed a lot line adjustment between 8 Packer Brook Road and 6 Packer Brook Road. The defendant proposed to remove 11,293 square feet from lot 4, map no. 2009, along the west side and southwesterly corner and transfer that square footage to 6 Packer Brook Road to provide an internal access way for 6 Packer Brook Road. The defendant proposed to transfer a parcel of similar size from 6 Packer Brook Road to former lot 4, map 2009, thereby creating two new and different lots having areas identical to the former lots. The proposed new lots are shown on the town clerk's map no. 3752. The plaintiff's planning commission denied the creation of the proposed new lots. The map no. 3752, however, was filed in the town clerk's office on August 4, 1995. The map no. 3752 did not affect the validity of the taxes on the October 1, 1994 grand list.

In addition, the court found that the plaintiff's tax assessor mistakenly redrew the two lots on the tax assessment map to conform to map no. 3752. The subject property is shown incorrectly on the tax assessment map 17, block 71, as lot P-4. The assessor's record, however, correctly refers to the property as being found in volume 196, page 340. The continuing tax liens also refer to the description of the property as located in volume 196, page 340, which is the proper description of the property in question.[4]

---

[1] The subject tax lien states: "CERTIFICATE CONTINUING TAX LIEN FOR NOT MORE THAN FIFTEEN YEARS

"The undersigned Tax Collector of the TOWN OF REDDING in the County of Fairfield, State of Connecticut, hereby continues for a period of not more

The court framed the issues before it as (1) which description controls when a continuing certificate of tax lien refers to an assessor's map that improperly describes the property and also refers to a recorded volume and page that correctly describes the property and (2) which description controls when an assessor's record improperly describes the property by reference to an assessor's map and also refers to a recorded volume and page that correctly describes the property. The court held that the volume and page description in each instance shall control pursuant to the rule enunciated in *Mulla* v. *Maguire*, 65 Conn. App. 525, 532, 783 A.2d 93 (when deed sets forth two different descriptions of property to be conveyed, one containing less certainty must yield to that possessing greater, if apparent conflict between two cannot be reconciled), cert. denied, 258 Conn. 934, 785 A.2d 229 (2001).

The court also concluded that the defendant's special defense that the tax liens were time barred was without merit pursuant to Special Acts 1999, No. 99-7, § 1, known as the validating act. See Special Act 99-7 §§ 1 (a), (d), (c) (i) and 10. The court found the total debt to be $27,946.24 plus costs and attorney's fees. It set a sale date of May 21, 2005, and rendered a judgment of foreclosure by sale pursuant to a memorandum of decision on December 1, 2004.

The record further reveals that on December 9, 2004, the defendant filed a motion for extension of time in which to appeal. The court denied the motion. On March 15, 2004, the defendant filed a motion to open the judgment, which the court also denied. On April 22, 2005,

than fifteen years from the date hereof a tax lien in favor of the said town of Redding upon certain real estate situated in said town of Redding, which real estate is described as follows:

PROP LOC:      8 PACKER BROOK RD     BILL #94101662
M / B / L:      17 71 P-4     VOL. 0122 PAGE 0531
NEW OWNER NAME: ELFIRE LLC"

the defendant filed a pleading in this case captioned "petition for a new trial" in which it alleged, in part, the discovery of new material evidence in its favor, specifically that on March 21, 2005, the plaintiff's assessor gave notice that the subject property was residual acreage and had merged. The court denied the "petition for a new trial" on the papers on May 18, 2005. At about the time the "petition" was filed, present counsel filed his appearance on behalf of the defendant.

Subsequently, the defendant states in its brief, it took certain steps to assert its constitutional right to appeal,[5] namely, by filing a motion for stay. The trial court denied the stay. The defendant then applied to the United States District Court for the District of Connecticut for a temporary restraining order to stay the foreclosure sale. The federal court denied the defendant's request for an injunction on the basis of comity. Thereafter, the defendant filed a chapter eleven petition in bankruptcy in the federal court. The Bankruptcy Court dismissed the petition. In the interim, the defendant filed a motion for argument and reconsideration of its "petition for a new trial." After the dismissal of the defendant's bankruptcy petition, Spray filed a motion to reschedule the auction. A hearing on the motion to reargue was held on August 22, 2005. On that date, the court entered lengthy orders regarding the foreclosure, appointed the plaintiff's appraiser for the return of the oath of appraisers, affirmed the standing orders of its December 1, 2004 judgment of foreclosure by sale, set a new sale date of November 19, 2005, and denied the motion to reargue. On August 30, 2005, the defendant filed a second motion for argument and reconsideration of its "petition for a new trial." The court denied the motion

---

[5] We know of no such constitutional right that pertains to the facts of this case, and the defendant has not provided legal support for its claim. In this jurisdiction, the right to an appeal is provided by statute. See *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 527, 857 A.2d 976 (2004).

and stated "any further motion for argument filed by the defendant . . . is not to delay the time period for the defendant to appeal." On September 2, 2005, the defendant filed additional motions to open the judgment and for reargument that the court denied. The defendant filed the current appeal on September 6, 2006. On its appeal form containing the docket number of this case, the defendant stated that it was appealing from the judgments of the trial court (1) denying its petition for a new trial and (2) the judgment of foreclosure reentered on August 22, 2005.

I

The defendant's first claim is that the court abused its discretion in denying its "petition for a new trial" on new corroborating evidence that the foreclosed parcel of land was merged land, not a building lot, and therefore was not subject to the liens. Spray argues that the defendant did not file a *petition* for a new trial, but a *motion* for a new trial, which was untimely, and that the court properly denied the so-called petition. We do not reach the defendant's claim that the court abused its discretion because the record is inadequate for our review. We conclude, however, that the pleading by which the defendant sought a new trial was the functional equivalent of a motion, not a petition. The difference between a *petition* and a *motion* for a new trial is significant.

A careful review of the file demonstrates that the following facts are relevant to our conclusion. On April 22, 2005, the defendant filed a summons, a document captioned "petition for new trial (C.G.S. Sec. 52-270) complaint," a certification to counsel of record and a marshal's return certifying that the marshal had made service of the "original summons and complaint petition for a new trial" at the usual place of abode of Spray's

general partner on April 22, 2005. Significantly, the summons does not bear a return date and neither does the complaint petition for a new trial. In the caption of both, where a return date might otherwise be located is written "D/N CV99-0337512S," the docket number of this case. Although the papers are date stamped, there is nothing in the appellate record or trial court file to indicate that a filing fee had been paid.[6]

The complaint alleged, among other things, that since the trial of this action, new material in favor of the defendant had been obtained. It also alleged a three count counterclaim: the first count alleged an invalid assessment, the second alleged fraud and the third alleged that illegal taxes were illegally collected. Spray filed an objection to the "petition for new trial," arguing that the court should not grant the petition because (1) the "petition" was filed in an existing action, rather than as an independent action, (2) the court previously had rejected the substance of the "petition" when it denied the defendant's motion to open the judgment, (3) the "petition" failed to demonstrate good cause, materiality or a likelihood of a different outcome that would require a new trial and (4) the defendant failed to reassert a proposed amendment to its counterclaim that had been denied previously. Judge Axelrod summarily denied the "petition" and sustained Spray's objection on the papers.[7] Neither party filed a motion for articulation asking the court to explain the factual and legal bases for its decision related to the "petition

---

[6] Nonetheless, at oral argument, counsel for the defendant claimed to have paid an entry fee. A copy of a receipt for the entry fee is not included in the appendix to the defendant's brief.

[7] The defendant complains that the court ruled without hearing arguments from the parties. Practice Book § 11-18 (a) provides in relevant part: "*Oral argument is at the discretion of the judicial authority* except as to motions to dismiss, motions to strike, motions for summary judgment . . . and motions for judgment on the report of an attorney trial referee . . . ." (Emphasis added.)

for a new trial."[8] See Practice Book § 66-5. We therefore do not know the bases on which the court denied the "petition" for a new trial, as the record is inadequate for our review. The appellant bears the responsibility for providing this court with an adequate record. Practice Book § 61-10.

On appeal, however, the parties have briefed and argued the abuse of discretion claim as turning on the nature of the pleading filed by the defendant, that is, whether it is a motion for a new trial; see Practice Book § 17-4A; or a petition for a new trial. See General Statutes § 52-270. Although we will not address the defendant's abuse of discretion claim, we will consider the arguments presented by the parties; see *Jackson* v. *Conland*, 171 Conn. 161, 165, 368 A.2d 3 (1976); because the distinction between a petition and a motion is not one of mere nomenclature. Furthermore, the essential facts are undisputed, the documents are before us and the issue concerns a question of law. See *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 815 n.27, 873 A.2d 965 (2005). Construction of a pleading is a question of law for the court to determine and requires de novo review. *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003). When a case requires the court to determine the nature of a pleading, courts are not required to accept the label affixed by the moving party. *Drahan* v. *Board of Education*, 42 Conn. App. 480, 489, 680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996).

A petition for a new trial is collateral to the action in which the new trial is sought and by its nature is a distinct and separate proceeding. *State* v. *Asherman*, 180 Conn. 141, 144, 429 A.2d 810 (1980). "So far as

---

[8] On October 3, 2005, the defendant, however, filed a motion for articulation asking the court to articulate "how it determined the tax liens as evidenced by the certificates to be valid and the certificates properly filed and recorded." The trial court denied the motion for articulation. This court granted the defendant's motion for review but denied the relief requested.

the right of appeal is concerned, there is a distinction between an order granting a motion for a new trial and a judgment entered upon a petition for a new trial, which may be instituted at any time within three years after a judgment is rendered. . . . The latter is appealable. . . . The difference is in at least two essential particulars. In the first place, a petition for a new trial is instituted by writ and complaint served upon the adverse party in the same manner as in any other new action. Although the action so stated is collateral to the action in which the new trial is sought, it nevertheless is a distinct suit in itself. The judgment rendered therein is, therefore, the termination of the suit. It is the final judgment in the action. . . . On the other hand, a motion for a new trial is filed in a case already pending and is merely a step in the procedure leading to the final judgment in that case. In the second place, *claimed errors committed in rendering judgment on a petition for a new trial are not reviewable on an appeal from the judgment rendered in the action in which a new trial is sought.*" (Citations omitted; emphasis added.) *Hoberman* v. *Lake of Isles, Inc.*, 138 Conn. 573, 576–77, 87 A.2d 137 (1952).

Although the defendant had a marshal serve a summons and complaint for what it called a petition for a new trial, the defendant filed the summons and complaint in this action under the docket number of the case in which it was seeking a new trial. By denying the so-called petition, the court treated it as if it were a motion.[9] Furthermore, the defendant did not take an immediate appeal from the court's action denying it a new trial; rather, it twice filed a motion to argue and reconsider the "petition." The defendant also raised the issue in an appeal concerning the action for which a

[9] The proper procedure for rejecting a petition for a new trial on jurisdictional grounds is to dismiss it. See *In re Clifton B.*, 15 Conn. App. 367, 370, 544 A.2d 666 (1988).

new trial was sought, which is not the proper procedure to follow when taking an appeal from the dismissal of a petition for a new trial. See *Hoberman* v. *Lake of Isles, Inc.*, supra, 138 Conn. 577. We are further convinced that the defendant intended the "petition for a new trial" to function as a motion for a new trial in view of the position it took in its reply brief in the face of Spray's argument that the "petition" was not filed in a separate proceeding. To wit, "[f]iling a separate action would have served no purpose in view of the sale scheduled for May 21, 2005. Defendant did not receive the assessor's letter until March 22, 2005, and could not have complied with the [ten] day rule of [Practice Book § ] 17-4A applicable to motions."

For the foregoing reasons, we conclude that the "petition for a new trial" that the defendant filed in this action failed to institute a separate and distinct proceeding for the purpose of having the court determine whether a new trial was warranted, and the court properly treated it as a motion for a new trial. Nonetheless, the record is inadequate for our review, and we cannot determine whether the court abused its discretion in denying what properly was a motion for a new trial.

II

The defendant's second claim is that the court improperly rendered judgment of foreclosure after trial by imposing the valuation and assessment of a nonexistent building lot on land that had no separate legal identity. We disagree.

The essence of the defendant's claim is that the amount of tax imposed is improper. Although the defendant conceded at oral argument that it had not appealed from the trial court's December 1, 2004 judgment, it persists in arguing that the assessment is improper. The substance of this claim, however, was resolved by this court in *Redding* v. *Elfire, LLC*, supra, 74 Conn. App.

497–99. The amount of tax due today is no different from the amount of tax due at the time the tax was assessed. The defendant, however, failed to avail itself of the statutory remedy in §§ 12-111 and 12-112 to challenge in a timely fashion the amount of the tax. The resolution of the defendant's claim is the same as it was on the first appeal. It is rejected.

"[A] taxpayer who has failed to utilize the available statutory remedies [may not] assert, in an action to collect a tax . . . that the tax has not been properly assessed. . . . The rationale for this rule is the need on the part of the government for fiscal certainty. A municipality, like any governmental entity, needs to know with reasonable certainty what its tax base is for each fiscal year, so that it responsibly can prepare a budget for that year. . . . Public policy requires, therefore, that taxes that have not been challenged timely cannot be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer. . . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside [those] statutes." (Internal quotation marks omitted.) Id., 498–99; see also footnote 3.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.